IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAINTREE LABORATORIES, INC.<br><br>   Movant,<br><br>   v.<br><br>McKESSON CORPORATION,<br><br>   Nonmovant.<br>_____/ | No. 11-80233 MISC JSW (JSC)<br><br>**ORDER RE: MOTION TO COMPEL RULE 45 SUBPOENA (Dkt. No. 1)** |

Now pending before the Court is the motion of Braintree Laboratories, Inc. ("Braintree") to compel its Rule 45 document subpoena served on third-party McKesson Corporation ("McKesson"). After carefully considering the papers submitted by the parties, and having had the benefit of oral argument on October 20, 2011, Braintree's motion is DENIED.

**BACKGROUND**

This motion arises from Rochester Drug Co-operative, Inc. v. Braintree Labs., Inc., 07-00142 SLR (D. Del.), a putative class action pending in Delaware federal court. Braintree, the defendant in that action and the movant here, manufactures MIRALAX®, a laxative used to prepare patients for gastrointestinal procedures. The named plaintiffs are, or

at least were, direct purchasers of MIRALAX®. They allege that through sham patent litigation Braintree violated the antitrust laws by delaying entry into the market of cheaper generic versions of MIRALAX®. The plaintiffs seek on behalf of themselves and the direct purchaser class the amount they were "overcharged" for MIRALAX® as a result of Braintree's allegedly anti-competitive conduct.

In anticipation of the plaintiffs' motion for class certification Braintree has issued a Rule 45 subpoena to McKesson, a MIRALAX® wholesaler and member of the putative class. Braintree seeks "transactional purchase and sales data for branded and generic versions of MIRALAX® as well as documents discussing price and competition with suppliers." (Dkt. No. at 5.) McKesson opposes the subpoena on the ground that the documents sought are not relevant and the request seeks an enormous volume of highly confidential proprietary documents.

## DISCUSSION

Braintree contends that documents sought will show that certain large class members, such as McKesson, actually profited from the alleged delay of the introduction to generics to the market because such large wholesale resellers pass on any "overcharge" to their customers. Since these class members actually profited (because profits are derived from a percentage of the resale value), the argument goes, the named plaintiffs have a conflict with absent class members such as McKesson. Further, according to Braintree, the documents will also demonstrate a phenomenon known as "generic bypass." The hypothesis is that retailers typically purchase brand-named pharmaceuticals from one of the major wholesalers, such as McKesson, but that when generics hit the market some of these same retailers purchase the generics directly from the manufacturers, thereby "bypassing" the wholesalers. In this way too, Braintree argues, McKesson and the other large wholesaler putatative class members have interests adverse to the named plaintiff thereby making the named plaintiff an inadequate class representative. See Fed. R. Civ. P. 23(a)(4). Braintree also contends that evidence of generic bypass is relevant to whether class members have suffered any antitrust

2

injury at all, and therefore is relevant to the commonality class certification inquiry. See Fed. R. Civ. P. 23(a)(2). The Court disagrees.

In Hanover Shoe, Inc. v. United Shoe Machinery Corp., 392 U.S. 481 (1968), the United States Supreme Court held that

> when a seller overcharges a buyer [in violation of] the antitrust laws, the fact that the buyer raises the price for its own product, thereby passing on the overcharge to its customers and avoiding a loss in profit, has no bearing on the issue of whether the buyer has suffered an injury and thus has the right to recover damages from the seller. Rather, damages are appropriate to the extent the buyer was overcharged, and must be measured accordingly.

Meijer, Inc. v. Abbott Labs., 251 F.R.D. 431, 433 (N.D. Cal. 2008) (citing Hanover Shoe, Inc., 392 U.S. at 489-92). The Supreme Court reaffirmed its Hanover Shoe holding in Illinois Brick Co v. Illinois, 431 U.S. 720, 731-32 (1977) and it is still the law today. Thus, the damages at issue for the putative class are the amounts of the overcharge each class member paid for MIRALAX®; whether McKesson and other class members somehow benefitted from the delay of the introduction of generics to the market is irrelevant to the merits of the underlying action. The interests of McKesson and the named plaintiffs are aligned: to recover any overcharge. The proprietary information sought by Braintree is thus irrelevant to the "adequacy of representation" class certification factor.

The Court is unpersuaded by the Eleventh Circuit's reasoning to the contrary in Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F.3d 1181 (11th Cir. 2003). There the Eleventh Circuit acknowledged that under Hanover Shoe and Illinois Brick a direct purchaser who passes on overcharges to its own customers and thus allegedly profits from another's antitrust violation nevertheless suffers a cognizable antitrust injury and may sue to recover the amount of the overcharge. Id. at 1193. The court nonetheless held that if some absent class members actually profited from the defendant's alleged antitrust violations, there would be a fundamental conflict between those class members and the named plaintiffs making the named plaintiffs "inadequate" class representatives. Id. at 1192. As the court explained, the wholesalers (that is, those absent class members that may have profited) may have been content with the defendant's conduct delaying the introduction of generics which would lead these "wholesalers and other similarly situated class members to have divergent interests and

3

objectives from the named representatives with respect to the fundamental issues in controversy in this litigation." Id. at 1193. If they are not content, the wholesaler class members could choose to file their own lawsuit to recover any overcharge. Id. at 1193.

The problem with the Eleventh Circuit's reasoning is that it ignores that if any putative class member would prefer not to participate in a lawsuit which could result in the introduction of a generic into the market that class member can opt out of the lawsuit. See Fed. R. Civ. P. 23(c)(2); Meijer, 251 F.R.D. at 436; Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd., 247 F.R.D. 253, 268-69 (D. Mass. 2008). As one court has noted, the opt out procedure determines "whether alleged conflicts are real or speculative. It avoids class certification denial for conflicts that are merely conjectural and, if conflicts do exist, resolves them by allowing dissident class members to exclude themselves from the action." Natchitoches Parish Hosp., 247 F.R.D. at 268 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3.30 (4th ed. 2002)). It is thus unsurprising that Valley Drug has not been followed in this District and others. See, e.g., Meijer, Inc., 251 F.R.D. at 433-36; Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd., 246 F.R.D. 293 (D.D.C. 2007); In re K-Dur Antitrust Litigation, 2007 WL 5302308 (D.N.J. Jan. 2, 2007); Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd., 247 F.R.D. at 268-69.

Moreover, the generic for MIRALAX® has already been introduced to the market so if the underlying class action lawsuit is successful it will not eliminate a benefit which McKesson is allegedly currently receiving; instead, the lawsuit will merely result in payment of the overcharge to each class member. Thus, there is in fact no potential conflict. See Meijer, 251 F.R.D. at 435; In re Wellbutrin Sr Direct Purchaser Antitrust Litigation, 2008 WL 1946848 *6 (E.D. Pa. May 2, 2008).

And, even if more evidence of a lack of conflict were needed, McKesson has stated in a declaration under oath that it desires to participate in the underlying lawsuit; it does not perceive any conflict with the named plaintiffs. See Meijer, 251 F.R.D. at 436 n.6 (noting that letter from counsel for three largest pharmaceutical wholesalers was probative as to whether any fundamental conflict exists). Indeed, the parties in Valley Drug ultimately

4

moved for a single settlement class--that is, a class that included the large national wholesalers who presumably had a fundamental conflict with the named plaintiffs. The district court nonetheless approved the settlement and the class on the ground that the "fact of settlement" was a "changed circumstance that directly addresses the Court's prior concern that led to denial of the Sherman Act Plaintiffs' motion for class certification." In re Terazosin Hydrochloride Antitrust Litig. CV No. 99-MDL-1317, Dkt. No. 1543 at 6 (S.D. Fla. March 18, 2005) (order granting certification of direct purchaser class). In particular, the court found that in light of the settlement, any class member who believed participation in the lawsuit was not in its interest could opt out. Id.

The sought-after downstream effects evidence is also irrelevant to the commonality inquiry of section 23(a)(2). The Supreme Court has made it clear that in an antitrust suit, a plaintiff's alleged benefit from a defendant's anti-competitive behavior because the plaintiff "passed on" any overcharge is not relevant to whether the plaintiff suffered a cognizable antitrust injury. Hanover Shoe, Inc., 392 U.S. 489-92. Whether the alleged benefit was from passing along the overcharge or from generic bypass is immaterial: the relevant question is whether the plaintiff paid an overcharge for the brand-name products it did purchase. It is thus unsurprising that Braintree is unable to cite any case which holds that the alleged existence of generic bypass is relevant to the commonality inquiry.

That the Third Circuit is currently considering an appeal in which the defendant is challenging the grant of class certification on the same grounds raised by Braintree here does not alter the Court's analysis. See K-Dur Antitrust Litig., 2007 WL 5302308 (D.N.J. Jan. 2, 2007); K-Dur Antitrust Ligit., 2008 WL 2699390 (D.N.J. April 14, 2008). Should the Third Circuit reverse the district court, Braintree, too, can appeal any grant of class certification on the same grounds. Or, Braintree can move to decertify any class based on new caselaw. See Fed. R. Civ. P. 23(c)(1)(C).

//

//

//

5

## CONCLUSION

For the reasons stated above, Braintree's motion to compel is DENIED. This Order disposes of Docket No. 1.

**IT IS SO ORDERED.**

Dated: October 20, 2011

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

6